**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ANTONIO D. FRIERSON, SR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.:2:14-CV-170-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| the Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on May 20, 2014 and Plaintiff's Memorandum in of Law [DE 15], filed by Plaintiff on September 10, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On December 18, 2014, the Commissioner filed a response, and on December 31, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits alleging disability as of January 2, 2006, due to symptoms associated with a learning disorder, a nervous condition, depression, and diabetes. Plaintiff's application was denied initially and upon reconsideration. On November 26, 2012, Administrative Law Judge ("ALJ") Dennis R. Kramer held a hearing at which Plaintiff, with an attorney, two medical experts and a vocational expert ("VE") testified. On January 30, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since January 2, 2006, the alleged onset date.

3. The claimant has the following severe impairments: diabetes mellitus, chronic infections of the skin, hyperglycemia, hypertension, and personality disorder with an intermittent explosive disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work, as the claimant can frequently lift and carry 10 pounds, stand and/or walk for at least 2 hours of an 8 hour workday, and sit for about 6 hours of an 8 hour workday. He has unlimited ability to push and pull with his upper extremities but never with his lower extremities. He can never climb ladders, ropes or scaffolds and can never kneel or crawl but can occasionally climb ramps and stairs, as well as balance, stoop, and crouch. He must avoid concentrated exposure to extreme cold or heat and workplace hazards such as slippery terrain and unprotected heights. The claimant is able to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions, and respond to usual work situations and to changes in a routine work setting. The claimant can have only occasional interaction with coworkers with no shared tasks, only occasional supervision, and only occasional interaction with the public with no sustained interaction with or close proximity to the public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 38 years old, defined as a younger individual age 18-44 on the alleged disability onset date, and subsequently changed age category to a younger individual age 45-49.

8. The claimant has limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the claimant is not disabled, whether or not he has transferable job

skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since January 2, 2006.

On March 21, 2014, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g)

**FACTS**

Plaintiff has been diagnosed with diabetes mellitus, chronic infections of the skin, hyperglycemia, and hypertension. On April 7, 2011, treating physician Dr. Nyongani amputated Plaintiff's right great toe because he had developed extensive wet gangrene, osteomyelitis, and cellulitis in the toe and foot. Plaintiff continues to use a cane to assist in ambulation.

Plaintiff has complained of depression including significant treatment in 1999 when he considered suicide. He states that he suffers from a learning disability, attended a special education program for school and did not graduate from high school. He has also been diagnosed with personality disorder with an intermittent explosive disorder.

Plaintiff lives by himself, but needs help managing his bills and someone comes in to cook, clean, and grocery shop. He does not know how to drive and has never had a driver's license.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

5

to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### I. Mental Impairment

Plaintiff argues that the ALJ erred at Step 2 by finding that Plaintiff's learning disability was not a severe impairment, and erred at Step 3 when he failed to find that Plaintiff met Listing 12.05(B) for intellectual disability.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). The determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

Listing 12.05 describes intellectual disability and provides, in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The ALJ concluded that there was no objective medical evidence in the record to support a diagnosis of intellectual impairment. The ALJ based this conclusion on the state agency consultative psychologists's opinion that she could not determine the accuracy of Plaintiff's IQ result. Dr. Brown, the consultative psychologist, administered an IQ test on which Plaintiff obtained a full-scale IQ result of 50 and was determined to be "within the Extremely Low range," placing him within the interval of 47-55 with 95% accuracy. AR 807. The ALJ stated that Dr. Brown "could not determine the accuracy of the testing" and that Plaintiff "tended to give up easily during the testing and that his work history was inconsistent with the scores." AR 24. The ALJ neglected to mention that Dr. Brown also stated that it was "the professional opinion of this psychologist that the results provide a valid and reliable assessment of [Plaintiff]'s functioning" or that the confidence interval for the score range was 95%. Dr. Brown herself stated that the IQ test was a "valid assessment" as required by Listing 12.05. A reviewing psychologist testified that there was an inconsistency in Dr. Brown's statements and points out that Dr. Brown did not provide a diagnosis of retardation, and it is this opinion that the ALJ relied upon, despite the Code's direction that ALJs should "give more weight to the opinion of a source who has examined [claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1);

416.927(c)(1); *see also Burton v. Apfel*, 1999 WL 46902, at *8 (N.D. Ill. 1999) (finding error in failure to afford "great deference" to the opinion of the only examining psychologist). The Listing does not require a diagnosis of retardation, only a valid IQ test with certain scores, yet the ALJ relied on the reviewing psychologist's opinion that Dr. Brown's test was invalid without taking any steps to recontact Dr. Brown to obtain any needed clarification. *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[O]pinions from any medical source on issues reserved to the Commissioner [such as whether an impairment meets a Listing] must never be ignored," and an ALJ must "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear.")

The problems with the ALJ's assessment of Plaintiff's mental limitations continue throughout the opinion, as described in more detail below. The Court concludes that the ALJ's analysis of Plaintiff's mental limitations was impermissibly perfunctory and remands for a more thorough analysis of the Plaintiff's alleged intellectual disability, including further assessments or the recontacting of treating and examining providers, as necessary.

**II.     Credibility Assessment**

The Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant

9

evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). Although an ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, *see, e.g., Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996), a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 28. This language has been criticized by the Seventh Circuit Court of Appeals as "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Bjornson v. Astrue*, 671 F.3d 640, 645, 647 (7th Cir. 2012). The inclusion of this boilerplate language is not grounds for remand when the ALJ otherwise provides "reasons grounded in evidence" for his credibility finding. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). In this case, there are no such reasons grounded in evidence: most of the ALJ's opinion is statements of excerpts from the medical records and agency reports rather than a clear explanation of the weight given to them or given to Plaintiff's claims. There are a few statements that could be construed as commenting on Plaintiff's veracity, but even if generously construed as credibility determinations, these statements leave much to be desired.

For example, the ALJ cited to a physician's notation that Plaintiff used a cane, then wrote, "[B]ut there is no record of anyone prescribing the cane." AR 30. It is not apparent to the Court how Plaintiff's use of ambulatory devices makes his allegations of pain and limitation less credible rather than bolstering them. *See Parker*, 597 F.3d at 922 ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); SSR 96-7p at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence."). The regulations specifically remind ALJs to take into account in their credibility determination that, for example, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms" and "the individual's symptoms . . . may be relieved with over-the-counter medications." SSR 96-7p, at *8. The ALJ failed to explain how use of non-prescribed medical devices or coping mechanisms shows that Plaintiff's allegations of pain are less than credible, rather than that Plaintiff uses assistive devices because of the pain and weakness he experiences. The ALJ also did not include Plaintiff's need for a cane in the RFC without explanation. *See, e.g., Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) ("'The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.' In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical.") (quoting *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)); 20 C.F.R. §§ 404.1545(a)(1), (a)(3); 416.1545(a)(1), (a)(3).

Even more troubling is the ALJ's characterization of Plaintiff as non-compliant with treatment. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding his symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). The ALJ did not ask Plaintiff about his compliance with treatment, and the credibility section of his opinion does not address any reasons for noncompliance, such as inability to afford treatment or the fact that failure to comply with treatment may be a sign of mental disability rather than a reason to discount its severity. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.").

The ALJ's multiple descriptions of Plaintiff's noncompliance with treatment is particularly troubling given his earlier finding that Plaintiff had no marked limitations in daily living or episodes of decompensation. Although Plaintiff was apparently not hospitalized for mental illness or mental impairment during the time in question, Plaintiff was hospitalized for amputation of his toe, apparently at least partially as a result of his inability to remain compliant with his diabetes treatment. The ALJ found that Plaintiff's mental impairment was less believable because Plaintiff stated that his learning disability did not hinder him, that he did not consistently report the fact that

12

he had been in special education as a child, and he has not sought treatment for his mental disorder. Especially viewed in light of the multiple indications of low intelligence and memory difficulties in the record, rather than indicating that his diabetes and other health problems are *less* severe than claimed, it appears that Plaintiff's difficulties with treatment may indicate that his mental abilities are *more* impaired than he reported.

The ALJ also refers several times to Plaintiff's daily activities, including several mentions of Plaintiff's self-report of his ability to watch unspecified thirty-minute television shows. The record is also replete with references to Plaintiff's need for help with things like cooking, cleaning, and shopping, although he is apparently able to take care of his personal hygiene. To the extent that the ALJ is implying that Plaintiff's extremely limited daily activities indicate an ability to work, the Court notes that the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of his children and household chores (activities Plaintiff required assistance with) with the ability to work. *See, e.g., Bjornson*, 671 F.3d at 647; *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006).

The ALJ did not make a separate, thorough credibility finding. His "post-hoc statement turns the credibility determination process on its head . . . rather than evaluating the [Plaintiff's] credibility as an initial matter in order to come to a decision on the merits." *Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003). The case is being remanded for a new, thorough credibility finding. The ALJ is reminded that the regulations require him to weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     [Plaintiff's] daily activities;
(2)     The location, duration, frequency, and intensity of [] pain or

     other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication . . . ;
(5) Treatment, other than medication, [Plaintiff] . . . received for relief of [] pain or other symptoms;
(6) Any measures . . . used to relieve [] pain or other symptoms . . . ; and
(7) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

### III. Residual Functional Capacity

The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p. Furthermore, an ALJ's "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p at *7. "SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

14

Plaintiff argues that the ALJ erred in relying on non-examining physicians instead of Plaintiff's treating physicians when determining his RFC. In particular, Plaintiff argues that the ALJ impermissibly discounted the opinion of Dr. Nyongani, who completed a medical source statement laying out Plaintiff's functional abilities as the result of his physical impairments.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.; *see also Schmidt v. Barnhart*, 395 F.3d at 744. Furthermore, an ALJ must specifically address opinions that address a plaintiff's ability to work, and "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013) (remanding in part for failure to address conflict between the RFC and physicians' opinions about the plaintiff's capacity) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to

provide a sound explanation for his decision to reject it.").

The ALJ discounted the medical source statement of treating provider Dr. Nyogani as "inconsistent with the record" because "the claimant can sit for the requirements of sedentary work" and "has further not shown an inability to sit or stand for the 2 hours." AR 32. The ALJ did not cite to any other medical evidence in the record as inconsistent other than a report of "intact grip strength, full strength in his extremities other than his lower right extremity, and normal fine finger manipulation," AR 32, and did not explain how reports of arm and finger strength related to Plaintiff's ability to sit or stand. The ALJ did not point to any evidence of another medical source opining as to the length of time that Plaintiff could sit or stand, but apparently discounted Dr. Nyongani's report based on his own assessment of Plaintiff's RFC.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to give controlling weight to the treating physician's opinion regarding the nature and severity of Plaintiff's impairments without explaining how his opinion was inconsistent with other substantial evidence in the record, did not identify any medical opinion from a treating or examining physician to which he gave greater weight, and failed to adequately identify the evidence on which he based the conclusion that Plaintiff was capable of performing the range work as described in his opinion.

The ALJ also failed to explain how he considered the limitations caused by Plaintiff's combination of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ

16

must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). The ALJ failed to consider Plaintiff's mental limitations and obesity in combination with his other impairments. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on h[is] underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted); *see also Gentle*, 430 F.3d at 868 (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact his obesity, intellectual impairments, and mental health problems have on his ability to perform work.

On remand, the ALJ is directed to fully weigh the medical evidence, including an appropriate analysis of the evidence from Plaintiff's treating and examining physicians, and explain his decision in a weigh that provides for meaningful review.

**IV.     Hypothetical to Vocational Expert**

The Court is also concerned by the questions posed to the VE. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young*, 362 F.3d at 1003 ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect disability determination. *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*.

In this case, the ALJ found that Plaintiff had moderate difficulties with maintaining concentration, persistence or pace, AR 26; however, it is not clear whether the ALJ included the limitation in his RFC, or if the VE's testimony would have been different if provided these limitations. Restricting Plaintiff to sedentary work with limited interaction with coworkers or the public does not account for his moderate limitations in concentration, persistence, and pace. *See*

*Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations).

The case is being remanded for other reasons described above, and new VE testimony will need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE, suggests that on remand the ALJ fully explain how he accounted for Plaintiff's moderate imitations in concentration, persistence, and pace in his RFC and incorporate them into his hypothetical to the VE.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in of Law [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 2nd day of September, 2015.

                                        s/ John E. Martin
                                        MAGISTRATE JUDGE JOHN E. MARTIN
                                        UNITED STATES DISTRICT COURT

cc:     All counsel of record